**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| JENIFFER GERMOSO,<br><br>            Plaintiff,<br><br>      v.<br><br>SAM'S WEST, INC.,<br><br>            Defendant. | Civ. No.: 4:25-cv-10705-MRG |

**ORDER ON DEFENDANT'S MOTION TO DISMISS [ECF No. 7]**

**GUZMAN, J.**

Ms. Jeniffer Germoso ("Germoso" or "Plaintiff") brings this action against her former

employer, Sam's West, Inc., ("SWI" or "Defendant"), alleging claims of disability discrimination

and retaliation related to her pregnancy leave in violation of Massachusetts law. [See State Court

Record, Compl., ECF No. 9]. Defendant SWI moves this Court to dismiss the matter pursuant to

Fed. R. Civ. P. 12(b)(6). [See Def.'s Mot. Dismiss, ECF No. 7].

For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN**

**PART**.

### I.      BACKGROUND

The following relevant facts are taken primarily from the allegations in Plaintiff's

Complaint, [Compl., ECF No. 9], and are accepted as true for purposes of this motion. Ruivo v.

Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must

separate the complaint's factual allegations (which must be accepted as true) from its conclusory

legal allegations (which need not be credited)"). All plausible inferences are made in Plaintiff's favor. Id.

### A. **Relevant Facts**

Plaintiff Germoso began working at SWI's fulfillment center in Worcester, MA as a package handler on or about August 12, 2021. [Compl. ¶¶ 5, 6]. About a year later, in August 2022, she learned that she was pregnant with an expected due date of May 1, 2023. [Id. ¶ 7]. In September 2022, Germoso informed her supervisor of her pregnancy with a letter from her physician and requested accommodation where she would not have to do any heavy lifting. [Id. ¶¶ 8, 9]. Germoso states that SWI did not respond to the request for an accommodation.[1] [Id. ¶ 10].

On April 7, 2023, approximately three weeks before Germoso's expected due date and her intended leave, Germoso informed her supervisor that she felt tired and her feet were swollen. [Id. ¶ 11]. Germoso's supervisor told her to go home and contact the Company's third-party benefits and leave administrator, Sedgwick, to ask to start her maternity leave early. [Id.] The same day, Germoso contacted Sedgwick to request a leave of absence and short-term disability ("STD") benefits with a start date of April 8, 2023. [Id. ¶ 12]. Two weeks later, Germoso applied for paid medical leave through the Massachusetts Department of Family and Medical Leave ("DFML") noting her due date of May 1, 2023. [Id. ¶ 13]. In the following weeks, Germoso received several emails from Sedgwick regarding her leave with various denials and acceptances, but Germoso ultimately received STD benefits from April 8 to August 1, 2023, and received DFML benefits from May 1, 2023, to September 1, 2023. [Id. ¶¶ 14–17].

---

[1] SWI contests this fact, arguing in its memorandum for its Motion to Dismiss that Germoso was given accommodations during her pregnancy via Sam's Temporary Alternative Duty Assignment, [ECF No. 8 at 3 n.1]. However, SWI references Exhibit A in support of this assertion but failed to append the Exhibit to its pleading. Therefore, the Court will consider this fact as presented by Plaintiff as true for purposes of this motion. Ruivo, 766 F.3d at 90.

    *i.*       *Germoso's Extension Requests*

In early August, Germoso received an email from Sedgwick indicating that she was expected to return to work by August 8, 2023. [Id. ¶ 18]. Germoso called DFML to confirm her leave until September 1 and then informed Sedgwick of her protected medical leave. [Id. ¶¶ 19–20]. Later that month, Germoso contacted both Sedgwick and DFML to request an extension of her leave. [Id. ¶ 21]. After several communications regarding the correct documentation, on September 12, 2023, Germoso's DFML approval was adjusted for May 12, 2023, to September 10, 2023. [Id. ¶¶ 22–27]. After receiving the approval, Germoso contacted Sedgwick over the phone once more to request an extension. [Id. ¶ 28]. The Sedgwick employee which Germoso spoke with asked her whether two more months of leave would be enough time, and Germoso said it would be. [Id. ¶ 29].

Germoso subsequently applied for bonding leave with DFML. On September 26, DFML approved and emailed SWI Germoso's bonding leave application, beginning on September 15 and ending on November 5, 2023. [Id. ¶ 30–31]. Germoso faxed a copy of the approval to Sedgwick. [Id. ¶ 31]. SWI did not appeal or respond to the approval decision. [Id.]

    *ii.*     *Germoso's Termination*

On October 6, 2023, Germoso received a call from a SWI Human Resources ("HR") assistant asking why Germoso had not submitted a resignation letter. [Id. ¶ 32]. Germoso informed the assistant that she was on approved leave until November. [Id. ¶ 33]. Germoso was then told that her leave was not in SWI's system. [Id. ¶ 34]. In response, Germoso re-sent the DFML approval letter to Sedgwick from September 26. [Id. ¶ 35]. Subsequently, on October 13, 2023, Germoso received a communication from SWI containing a "Leave Denial" letter indicating that the extension of leave request was denied. [Id. ¶ 36]. Germoso contacted SWI's HR department

and was told that a manager would contact her, however, she did not receive a call from the manager. [Id. ¶¶ 37–38]. Instead, three days later, Germoso received a notice from Sedgwick noting that her employment was terminated on October 12, 2023. [Id. ¶ 40]. Germoso attempted to speak with an HR manager, but her call was never returned. [Id. ¶¶ 41–42]. Germoso timely filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") on August 2, 2024, within 300 days of her October termination. [2] [ECF No. 10 at 5].

### B. Procedural History

Plaintiff commenced this action in state court on February 26, 2025. [See Compl.] The action was removed to federal court on March 26, 2025, on grounds of diversity jurisdiction. [ECF No. 1]. In April 2025, Defendant filed its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Plaintiff promptly opposed the motion. [ECF Nos. 7, 10]. The Court heard oral argument on the matter in January 2026. [ECF No. 19].

### II.    LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for

---

[2] In Defendant's Motion to Dismiss Memorandum, Defendant implied that Germoso failed to make any filing to MCAD, or if a filing was made, it was untimely. [ECF No. 8 at 8 n.4]. Plaintiff in her objection to the Motion to Dismiss attached an affidavit from her counsel for the Court's review. [ECF No. 10-1]. Plaintiff's counsel noted that Germoso's MCAD complaint was timely filed and opposition counsel had been aware of the filing at previous conferences. [Id. ¶¶ 2–7; ECF No. 9 at 5]. The Court may consider certain documents the authenticity of which are not disputed by the parties, official public records, documents central to Plaintiff's claim, and documents sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993) (collecting cases). An affidavit filed by counsel in the matter, the authenticity of which is not disputed by the parties, related to Plaintiff's pre-requisite administrative exhaustion for her discrimination claims, is appropriate for the Court to review at the motion to dismiss stage without converting the proceeding to one for summary judgment.

more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). When deciding a 12(b)(6) motion to dismiss, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012) (citing Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). At the pleading stage, a plaintiff is not required "to plead facts sufficient to establish a prima facie case," but "those elements are part of the background against which a plausibility determination should be made." Rodríguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013). At this stage, a "plaintiff must allege a series of facts which at the very least gives rise to an inference of discriminatory animus." Johnson v. Gen. Elec., 840 F.2d 132, 138 (1st Cir. 1988).

III.    **DISCUSSION**

A.  **Count I: Disability Discrimination in Violation of M.G.L. c. 151B § 4(16)[3]**

Mass. Gen. Laws ch. 151B, § 4 ("Chapter 151B") is Massachusetts' antidiscrimination law which provides a cause of action for individuals who have been discriminated against by their employer based on a protected characteristic. See Mass. Gen. Laws ch. 151B. Because Chapter 151B "is the 'Massachusetts analogue' to the [Americans with Disabilities Act ("ADA")]," Stratton v. Bentley Univ., 113 F.4th 25, 52 n.26 (1st Cir. 2024) (quoting Sensing v. Outback

---

[3] The Court notes that Plaintiff brings her claims under Chapter 151B, section 4(16), for disability discrimination based on her medical leave due to pregnancy. Pregnancy is not *per se* a disability, however, in many cases pregnancy may render an individual disabled. Mass. Gen. Laws ch. 4(16). In addition to the disability protections under Massachusetts law, Chapter 151B provides explicit protection for pregnant persons and their accommodation needs. Chapter 151B, section 4(1E).

Steakhouse of Fla., LLC, 575 F.3d 145, 153 (1st Cir. 2009)), "federal case law construing the ADA should be followed in interpreting the Massachusetts disability law." Id. (quoting Ward v. Mass. Health Rsch. Inst., 209 F.3d 29, 33 n.2 (1st Cir. 2000)). Therefore, courts "analyze claims under the ADA and Chapter 151B using the same framework." Id. (citing Der Sarkisian v. Austin Preparatory Sch., 85 F.4th 670, 675 (1st Cir. 2023)).

Plaintiff brings a claim for failure to accommodate disability under Chapter 151B, § 4(16). [Compl. ¶¶ 48–51]. Defendant moves this Court to dismiss Plaintiff's claims on two main grounds, (1) Germoso did not directly and specifically request an accommodation regarding her pregnancy, and (2) that SWI's accommodation of early maternity leave, while not the employee's preferred accommodation, was sufficiently reasonable under the legal standard. [ECF No. 8 at 5–7]. Defendant also argues that if Plaintiff bases her failure to accommodate claim on her initial accommodation request in September 2022, the claim is time barred.

Plaintiff argues that her failure to accommodate claim is not predicated on the initial accommodation request made in September 2022 but the "continuing pattern of failing to engage meaningfully in the interactive process" in accommodating Germoso's pregnancy, and her eventual termination from SWI's employment. [ECF No. 10 at 5–6; Court Rough Transcript of Motion Hearing, Jan. 21, 2026 (hereinafter "Tr.") 2:1–6, ECF No. 19 ("[T]he claim does not rely on the September 2022 accommodation request, that's background information. So the arguments [Defendant] made about that portion of the claim can be considered moot at this point")]. Plaintiff's arguments center around events in April 2023 when Germoso was dismissed from her work to begin maternity leave early, and October 2023 when she was terminated from her role. [See ECF No. 10]. Therefore, the Court's analysis for the pending failure to accommodate claim will be constrained to the requests and events during the period of April to October 2023.

When, as is here, there is no direct evidence of discrimination, courts evaluate Chapter 151B, § 4 disability discrimination claims using a three-step burden-shifting framework originating from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–07 (1973). See Brader v. Biogen Inc., 983 F.3d 39, 54–55 (1st Cir. 2020). The plaintiff must establish a *prima facie* case by demonstrating that she (1) was disabled within the meaning of Chapter 151B, (2) was "nonetheless qualified to perform the essential functions of the job, with or without reasonable accommodation," and (3) was terminated "in whole or in part" because of her disability. Der Sarkisian, 85 F.4th at 675; Brader, 983 F.3d at 55 (citation omitted). Next, the burden of production shifts to SWI to provide a legitimate reason for terminating Germoso "which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive." Brader, 983 F.3d at 55 (citation omitted). With respect to a claim based on the employer's failure to provide reasonable accommodation, the third prong of the *prima facie* case can be satisfied by a showing that the employer "despite knowing of [the employee's] alleged disability, did not reasonably accommodate it." Sensing, 575 F.3d at 157 (citation to quoted case omitted); Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 90 (1st Cir. 2012); Freadman v. Metro. Prop. &Cas. Ins. Co., 484 F.3d 91, 102 (1st Cir. 2007). "A plaintiff must explicitly request an accommodation, unless the employer otherwise knew one was needed." Jones, 696 F.3d at 90 (citing Freadman, 484 F.3d at 102); see Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination, 808 N.E.2d 257, 267–68, 270–71 (Mass. 2004). "An accommodation request must be sufficiently direct and specific, and it must explain how the accommodation is linked to plaintiff's disability." Jones, 696 F.3d at 90 (citing Freadman, 484 F.3d at 102). "If the requested accommodation is not suitable or the request is otherwise inappropriate, the employer nonetheless 'must make a reasonable effort to determine the appropriate accommodation . . . through a flexible interactive process that involve[d]

both the employer and the qualified individual with a disability.'" Miceli v. Jetblue Airways Corp., 914 F.3d 73, 82 (1st Cir. 2019) (quoting Russell v. Cooley Dickinson Hosp., Inc., 772 N.E.2d 1054, 1065 (Mass. 2002)).

A "reasonable accommodation" as defined by current MCAD guidelines for pregnancy, is a "modification or adjustment that allows the employee or job applicant to perform the essential functions of the job while pregnant or experiencing a pregnancy-related condition, without undue hardship to the employer." Massachusetts Commission Against Discrimination Guidelines: Pregnant Workers Fairness Act (2018) ("MCAD Guidelines") (amending the statute prohibiting discrimination in employment under Mass. Gen. Law ch. 151B, § 4(1E)). Mass. Gen. Law ch. 151B, § 4(1E)(b) (A "reasonable accommodation" may include, "time off to attend to a pregnancy complication or recover from childbirth with or without pay.")

Defendant concedes for the purpose of this motion that Germoso had a disability requiring accommodation. [ECF No. 8 at 5]. Therefore, the issue at this juncture is whether she requested reasonable accommodations to which SWI declined to provide. [Id.]; Sensing, 575 F.3d at 157.

### i.    Plaintiff's initial departure from SWI

Plaintiff argues both in her papers and at oral argument, that the unilateral decision to send her home for early maternity leave after a mere complaint that she was tired and her feet were swollen late in her pregnancy, was not a proper accommodation, but a failure to engage in the required interactive process. [ECF No. 10 at 6; Tr. at 8:1–4]. Defendant argues that Germoso filed a formal leave request after she was sent home by her manager and the leave was subsequently granted, therefore on the face of the complaint, her accommodation request was properly granted. [ECF No. 8 at 6–7; Tr. 2:8–24]. Defendant asserts that, at no point did Germoso request a different accommodation, nor did she contest the early start to her maternity leave. [ECF No. 8 at 6–7].

Unless the disability and necessary accommodation are obvious, it is the plaintiff's burden to request reasonable accommodation which is specific to her disability needs. See Jones, 696 F.3d at 90 (citing Freadman, 484 F.3d at 102); Russell, 772 N.E.2d at 1063–65 (summary judgment appropriate where the record established that the accommodations were "never requested or even suggested by the plaintiff"); see also Ortiz-Martinez v. Fresenius Health Partners, PR, LLC, 853 F.3d 599, 605 (1st Cir. 2017) (While some disabilities are obvious enough that no request for an accommodation is necessary, in most cases, "[t]he burden is on [the plaintiff] to demonstrate in the first instance what specific accommodations she needed and those accommodations were connected to her ability to work."). An employee's direct and specific request for a needed accommodation "sometimes creates 'a duty on the part of the employer to engage in an interactive process.'" E.E.O.C. v. Kohl's Dep't Stores, Inc., 774 F.3d 127, 132 (1st Cir. 2014) (footnote omitted) (quoting Enica v. Principi, 544 F.3d 328, 338 (1st Cir. 2008)); see Russell, 772 N.E.2d at 1065 (similar requirement under Chapter 151B). The interactive process is meant to be a "'meaningful dialogue with the employee' to determine a reasonable accommodation once the employee has requested an accommodation." Kahriman v. Wal-Mart Stores, Inc., 115 F.Supp.3d 153, 162 (D. Mass. 2015) (citing Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 108 (1st Cir. 2005)).

Here, in April 2023, Plaintiff informed her manager that her feet were swollen, and she was tired. [Compl. ¶ 11]. The Court does not view this statement as a request for specific accommodation or a request for a change at the workplace. See Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001) ("The employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace."). However, the manager sent Germoso home to begin maternity leave early. [Compl. ¶ 11]. Under the ADA and Chapter 151B, temporary leave of absence is frequently recognized as

reasonable accommodation. See Russell, 772 N.E.2d at 1064(citing cases). At no point did Germoso inform SWI that being sent home was accommodation that she found to be insufficient. Freadman, 484 F.3d at 105 ("We reject [the] proposition that employees who make requests have no obligation to further clarify their needs once the employer offers an accommodation the employee believes is insufficient."). "The contours of the interactive process are determined by what the employer knows, which is, in turn, usually determined by the specificity of the request made by the employee." Scalone-Finton v. Falmouth Public Schools, No. 1:21-cv-11792-JEK, 2024 WL 4335451, *16 (D. Mass. Sept. 27, 2024) (citing Kvorjak v. Maine, 259 F.3d 48, 53–54 (1st Cir. 2001)).  Instead of objecting to the premature maternity leave, Germoso followed the advice of her manager, applied for short term disability benefits, and began maternity leave as of April 8, 2023. [Compl. ¶¶ 12, 16].

Based on the facts before the Court, it is clear that Germoso did not attempt to specify the accommodation she was seeking or engage in a dialogue regarding whether her desired accommodation differed from the accommodation proposed by SWI. Therefore, Germoso did not attempt to engage in an interactive process for alternative accommodation. E.E.O.C., 774 F.3d at 132–33. Instead, the Complaint shows that Germoso's request for STD benefits, the only request Germoso made to SWI at the time, was approved.[4] [Compl. ¶ 16]. Given the facts presented, Germoso cannot show that SWI did not reasonably accommodate her disability because she never articulated specific accommodation or asked for something other than what SWI offered. Therefore, Germoso fails to satisfy the third prong in the analysis, Sensing, 575 F.3d at 157, and she cannot prevail on a claim of failure to accommodate for the April 2023 interaction.

---

[4] The Court notes that although Germoso was eventually approved for short term disability benefits, the communication process from Sedgwick was nothing short of confusing. Over the course of several weeks Germoso received several letters denying and subsequently approving her benefits in altering time frames. [Compl. ¶¶ 12, 15–16].

*ii.    Germoso's termination in October 2023*

The analysis differs for events that occurred in October 2023. Here, Germoso explicitly requested a leave extension from Sedgwick and the DFML, which was approved by both parties. [Compl. ¶¶ 28–31]. SWI was properly notified of the DFML approval and did not oppose the request by initiating an interactive dialogue with Germoso. [Id.] Germoso argues that SWI acted in bad faith, using the expiration of her protected leave as a basis to terminate her employment, even though the company was put on notice that she was still benefiting from protected medical leave from DFML. [ECF No. 10 at 6].

Defendant argues that this final extension request was not for her disability leave, but for a bonding leave, and therefore does not qualify as disability discrimination. [ECF No. 8 at 7]. Defendant's argument is unpersuasive, as the bonding leave would not have been necessary but for the pregnancy and birth which were the basis of the disability leave. Additionally, in this case, a temporary extension of leave may have been reasonable accommodation worthy of the interactive process. Criado v. IBM Corp., 145 F.3d 437, 443 (1st Cir. 1998) ("A leave of absence and leave extensions are reasonable accommodations in some circumstances"); Mass. Gen. Law ch. 151B, § 4(1E)(b)(ii) (A "reasonable accommodation" may include, "time off to attend to a pregnancy complication or recover from childbirth with or without pay.").

Whether an extension of leave request is reasonable is case-dependent, the analysis of which is focused on the burden to the employer, the duration of the extension, and the likelihood of the employee to return to the workplace. Russell, 772 N.E.2d at 1064. However, the record here on the process is limited due to SWI's failure to engage. Germoso was granted additional bonding leave by the DFML, and SWI orally granted her an extension of her disability leave, until early November 2023. [Compl. ¶¶ 26, 29–31].  Regardless of whether the bonding leave should have

11

been approved by DFML, or whether SWI erred in communicating an extension of Germoso's leave, SWI terminated Germoso without engaging in any interactive process for an accommodation which would allow Germoso to return to work. The interactive process could have resulted in alternative options such as unpaid leave of absence rather than termination. See Mass. Gen. Law ch. 151B, § 4(1E)(b). In Germoso's opinion, failure of SWI to even broach potential accommodation is an example of a failure to accommodate. [Tr. 8:11–21]. The Court agrees.

Additionally, what differs in this instance versus Germoso's original departure, is that Germoso was actively attempting to engage SWI in a dialogue regarding her options, where Germoso was promised a call from SWI's HR team to discuss her termination or alternative outcomes, and SWI failed to return her calls or engage in any kind of interactive process. [Compl. ¶¶ 37–42]. The absence of a conversation with Germoso, even an informal one, demonstrates a failure to engage with Germoso for potential reasonable accommodation to address her needs. E.E.O.C., 774 F.3d at 132 n. 5 ("[A]n employer's participation in the interactive process [is not] an absolute requirement under the ADA"; rather, the employer must "initiate ... a dialogue" with the employee, and court will review adequacy "on a case-by-case-basis" (citation omitted)).

Therefore, the motion to dismiss as to Count I for Germoso's termination in October 2023, is **DENIED.**

### B.  Count II: Retaliation in Violation of M.G.L. c. 151B § 4(4)

Defendant argues that Plaintiff fails to establish a retaliation claim under Chapter 151B because the complaint is "devoid of any allegation to establish a retaliatory motive – such as hostile comments, or adverse actions during her leave of absence." [ECF No. 8 at 9]. Defendant also argues that the Plaintiff cannot establish retaliation by the presumption of temporal proximity,

arguing that the protected activity in question was the initiation of Plaintiff's leave in April 2023 and the termination was more than six months later in October 2023. [ECF No. 8 at 10].

To make a *prima facie* case of retaliation, an employee must show: (1) she engaged in protected activity or availed herself of a protected right; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between her protected conduct and the adverse employment action. Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 719 (1st Cir. 2014) (FMLA); Psy-Ed Corp. v. Klien, 947 N.E.2d 520, 529–30 (Mass. 2011) (Mass. Gen. Laws ch. 151B). see also Calero–Cerezo v. United States Dept. of Justice, 355 F.3d 6, 25–26 (1st Cir. 2004) (noting that the burden to establish a *prima facie* case in the context of retaliation in not "an onerous one" (citation omitted)).

The McDonnell Douglas burden-shifting framework generally applies to retaliation claims as well. Gunter v. Shapley & Stern, Inc., No. 1:19-cv-12502-IT, 2021 U.S. Dist. LEXIS 84110, at *15 (D. Mass. Apr. 30, 2021) (citing Lockridge v. Univ. of Me. Sys., 597 F.3d 464,472 (1st Cir. 2010)). Once a plaintiff establishes her *prima facie* case, the burden then shifts to the defendant to articulate legitimate, nondiscriminatory reasons for the adverse action. If the defendant meets the burden, plaintiff "must now show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Calero-Cerezo, 355 F.3d at 26. A plaintiff "need not plead facts sufficient to establish a prima facie case at the pleading stage," Carrero-Ojeda, 755 F.3d at 719, but those elements may serve "as a prism to shed light upon the plausibility of a [plaintiff's] claim." Rodríguez-Reyes, 711 F.3d at 54.

For the purposes of this motion, Defendant concedes "that Plaintiff engaged in a protected activity by seeking an accommodation for her disability and that she suffered an adverse employment action when Sam's terminated her." [ECF No. 8 at 9]; see Consedine v.Willimansett

13

East SNF, 213 F.Supp.3d 253, 260 (D. Mass. 2016) ("[T]he ADA and Chapter 151B proscribe retaliation for engaging in protected activity, including requesting a reasonable accommodation." (citing 42 U.S.C. § 12203(a); Mass. Gen. Laws ch. 151B § 4(4); Murray v. Warren Pumps, LLC, 821 F.3d 77, 87 (1st Cir. 2016))). The issue before the Court is whether Plaintiff can prove causation between the two events.

As noted *supra* III.A.ii, an extension of prior-approved leave is considered reasonable accommodation, therefore a request for this extension is a protected activity under Chapter 151B. See Criado, 145 F.3d at 443; Consedine, 213 F.Supp. 3d at 261– 62 (denying the Defendant's motion for summary judgment for disability retaliation where the plaintiff requested a leave of absence and was subsequently terminated); see Mass. Gen. Laws ch. 151B, § 9 (Chapter 151B to be "construed liberally for the accomplishment of its purposes."). Germoso's last extension of leave request occurred in September 2023; her termination occurred two weeks later. [Compl. ¶¶ 30, 40]. Therefore, the temporal proximity between Plaintiff's request for accommodation and her termination is sufficient for a presumption of retaliation. Oliver v. Digital Equip. Corp., 846 F.2d 103, 110 (1st Cir.1988) (discharge occurring "soon after" employee engages in protected conduct "is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation."); see also Calero-Cerezo, 355 F.3d at 25 ("The Supreme Court has stated that the cases that accepted mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action is sufficient evidence of causality to establish a prima facie case uniformly hold that temporal proximity must be very close."). Termination which occurred within two weeks of the approval of DFML bonding leave is very close in temporal proximity.

14

Defendant argues that the legitimate reason for termination was that Plaintiff exhausted her legally available leave. The Court will address the insufficiency of that argument in the next section. [See *infra* III.C]. The Defendant provides no other legitimate grounds for Germoso's termination for the Court to consider. Therefore, it has not rebutted the presumption of retaliation at this stage, and the Court need not address Plaintiff's burden to show pretext and retaliatory motive at this time.

Taking all the well-plead facts in Plaintiff's favor as we must at this point in the litigation, Germoso has sufficiently alleged a plausible claim of retaliation under Chapter 151B.

Therefore, the motion to dismiss as to Count II is **DENIED.**

### C.  **Count III: Retaliation in Violation of Mass. Gen. Laws ch. 175M, § 9**

Defendant argues that the Complaint "establishes a clearly legitimate reason for Ms. Germoso's termination – her failure to return to work after exhausting all available leave," and that Germoso's legally protected leave expired in October 2023. [ECF No. 8 at 10]. The Massachusetts Paid Family and Medical Leave Act, ("PFMLA"), Mass. Gen. Laws ch. 175M, makes it unlawful for any employer to:

> retaliate by discharging, firing, suspending, expelling, disciplining, through the application of attendance policies or otherwise, threatening or in any other manner discriminating against an employee for exercising any right to which such employee is entitled . . . or with the purpose of interfering with the exercise of any right to which such employee is entitled.

Mass. Gen. Laws Ann. ch. 175M, § 9. A plaintiff faces a similar burden to succeed on a claim of retaliation under Mass. Gen. Laws ch. 175M, §9, a plaintiff must provide sufficient evidence that: (1) she had a protected right, (2) she was adversely affected by an employer's decision, and (3) there was a causal connection between her protected conduct and the adverse employment action.

15

See McKeon v. Robert Reiser & Co., Inc., 770 F.Supp.3d 351, 376 (D. Mass. 2025) (citing Rousseau v. Clark Univ., No. 22-cv-40118, 2023 WL 3435570, at *4 (D. Mass. May 12, 2023)).

Unlike Chapter 151B, the PFMLA statute imposes a presumption of retaliation whenever an employee is terminated during a protected leave, or within six months of taking protected leave under the statute. Mass. Gen. Laws c. 175M § 9(c). This presumption can only be rebutted by the employer with "clear and convincing evidence." Id.

As noted above, Plaintiff was terminated within two weeks of receiving approval for, and while still on, protected bonding leave by the DFML. [Compl. ¶¶ 30, 40]. Defendant argues that it provided the legally protected maximum leave of 26 weeks available to employees under the PFMLA and was under no further obligation to grant leave to Germoso for her pregnancy, or bonding leave. However, as noted in the Complaint, Germoso's approval of leave – both through the short-term disability benefits through Sedgwick and by the PFMLA changed several times throughout the course of April to October 2023. [Id. ¶¶ 13, 17, 27, 30]. The final period of leave from PFMLA for Germoso's disability leave was modified to May 12, 2023, to September 10, 2023, a period of just over 17 weeks, and the additional bonding leave was approved for approximately 7 weeks. [Compl. ¶¶ 27, 30; Tr. 11:22–12:14]. The total leave, under the PFMLA exclusively, was a total of 24 weeks. [ECF No. 10 at 7]. The argument that Germoso had exhausted her legally protected leave, and her failure to return to work constituted a resignation of her role, [ECF No. 8 at 10], completely disregards the fact that Germoso, whether proper or not, had received notice from DFML that she continued to benefit from protected leave, and that SWI on a previous occasion had assented to leave for the same timeframe. [Id. ¶¶ 26, 29–31].

Plaintiff also argues in the alternative that even if she was mistaken about her approved period of leave, terminating her employment without proper notice for failure to return to work

under the mistaken belief of approved leave from the state, would in itself violate the PFMLA. [Id. at 8].[5] The Court agrees.

At a minimum, Defendant was put on notice of Germoso's approved PFML leave as early as September 26, 2023, and received an additional copy of the approval on October 6, 2023. [Compl. ¶¶ 31, 35]. SWI's potential clerical error for not noting Germoso's leave, whether it was properly granted by DFML or not, should not result in a termination without any notice for Germoso, particularly after Germoso had an oral agreement with a member of Sedgwick's team regarding the issue as early as mid-September. [Id. ¶ 28–29].

Defendant has not rebutted the presumption of retaliation by clear and convincing evidence, therefore, the motion to dismiss as to Count III is **DENIED.**

## IV.     **CONCLUSION**

For the reasons stated above, the Motion to Dismiss, ECF No. 7, **is GRANTED IN PART** and **DENIED IN PART.**


**SO ORDERED.**


Dated: March 20, 2026

 /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge

---

[5] Defendant conceded at oral argument that the Court should plausibly infer that Germoso was told by the DFML that she had approved leave until November. [Tr. at 6:1–7].